FELICE JOHN VITI, Acting United States Attorney (#7007)
MICHAEL KENNEDY, Assistant United States Attorney (#8759)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| UNITED STATES OF AMERICA, | Case No. 2:25-cr-00116-HCN |
|---|---|
| Plaintiff, | |
| vs. | POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING FACTORS |
| XUEMEI ZHAO, | |
| Defendant. | Judge Howard C. Nielson |

The United States of America, by and through the undersigned Assistant United States Attorney, and pursuant to Rule DUCrimR 32-1(b), Rules of Practice of the United States District Court for the District of Utah, states that after reviewing the Presentence Report (PSR) prepared by the U.S. Probation Office in connection with the sentencing of the above-named defendant, that it has conferred in good faith with counsel for the defendant and with the Probation Officer in an effort to resolve any anticipated disputed matters.

After receipt and review of the draft PSR in this case, the United States advised the Probation Officer and the defendant that it believed that a 4-level enhancement in the

defendant's Offense Level for the Special Offense Characteristic under U.S.S.G. § 2K2.1(b)(6)(B) for possession of any firearm or ammunition in connection with another felony offense applied in the defendant's case. (See PSR Addendum, ECF No. 38-1.) The United States also advised the Probation Officer and the defendant that it believed that the defendant had provided materially false information to the Probation Officer relating to her personal and family history. (See PSR Addendum, ECF No. 38-1.) Although the United States did not formally request an enhancement at that time, such conduct by the defendant would warrant a 2-level enhancement for obstruction under U.S.S.G. § 3C1.1, cmt. 4(H). The Probation Officer included neither enhancement in the final PSR.

### Objection to PSR Guideline Calculation.

The United States objects to the PSR's Guideline calculations and other recommendations insomuch as the PSR omits enhancements to the defendant's Offense Level pursuant to U.S.S.G. § 2K2.1(b)(6)(B) for possession of any firearm or ammunition in connection with another felony offense (PSR ¶ 15) and for obstruction under U.S.S.G. § 3C1.1, cmt. 4(H) (PSR ¶ 18). If included, the Adjusted Offense Level (PSR ¶ 19) would be 20, the adjustment for acceptance of responsibility (PSR ¶ 21) would remain 2[1], the

---

[1] The Court may still find acceptance credit applies even if it finds obstruction relating to the preparation of the PSR, and the United States would not object. However, the United States would not recommend the third level of credit for acceptance, which is given only in the government's discretion.

Total Offense Level (PSR ¶ 22) would be 18, resulting in an advisory Guideline range of 27 to 33 months at CH Category I.

### Application of U.S.S.G. § 2K2.1(b)(6)(B) Enhancement.

The Sentencing Guidelines call for a 4-level increase above the base offense level if a defendant "used or possessed any firearm or ammunition in connection with another felony offense ...."  USSG § 2K2.1(b)(6)(B). This enhancement applies "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense[.]" U.S.S.G. § 2K2.1 cmt. n. 14(A). "[P]ossession of a firearm may facilitate an offense by emboldening the possessor to commit the offense."  *United States v. Justice*, 679 F.3d 1251, 1255 (10th Cir. 2012) (affirming application of enhancement where a defendant's possession of two firearms facilitated or had the potential of facilitating his possession of methamphetamine). For the enhancement to apply, 1) a defendant must have used or possessed any firearm or ammunition in connection with what the defendant knew was a felony offense, and 2) the firearm or ammunition must have facilitated or had the potential to facilitate the felony offense. *United States v. Sanchez*, 22 F.4th 940, 941–42 (10th Cir. 2021).

Felony offenses relating to prostitution are covered 'other' offenses for the purpose of applying the enhancement. *United States v. Castro*, No. 24-2186, 2025 WL 1500508 (9th Cir. May 27, 2025); *United States v. Posey*, 644 F. App'x 253 (4th Cir. 2016).  It is immaterial whether the defendant was convicted – or even charged – with the covered

3

'other' offense. The Commentary to U.S.S.G. § 2K2.1(b)(6)(B) provides that the enhancement is applicable "regardless of whether a criminal charge was brought, or a conviction obtained." U.S.S.G. § 2K2.1(b)(6)(B) cmt. 14(C). It is the government's burden to prove facts justifying the application of a sentencing enhancement. The government must make this showing only by "a preponderance of the evidence, even where a contested fact has a significant impact on the sentence." *United States v. Adams*, 846 F. App'x 653, 658 (10th Cir. 2021) (citing *United States v. Robertson*, 946 F.3d 1168, 1171–72 (10th Cir. 2020)).

In this case, the United State avers that the defendant's possession of the firearm is connected to (at a minimum) either of two felony offenses: (1) a violation of the Travel Act, 18 U.S.C. § 1952 in which the predicate unlawful activity is a business enterprise involving prostitution in violation of Utah law[2], and/or (2) Exploiting Prostitution in violation of Utah Code Section 76-10-1305.[3]

The following facts, for which the United States is prepared to provide testimony, support the defendant's involvement in these offenses.

---

[2] This offense is a felony, punishable by up to 5 years in prison.

[3] Attached as Attachment A. Under § 76-10-1305(1)(e) and (2), whoever "owns, controls, manages, supervises, or otherwise keeps, alone or in association with another, a place of prostitution or a business where prostitution occurs or is arranged, encouraged, supported, or promoted" is guilty of a third-degree felony.

The defendant first came to law enforcement's attention boarding plane from the Provo airport to Dallas/Ft. Worth, with connection to LaGuardia NYC. TSA discovered an undeclared .357 Magnum revolver in her checked bag. Ammunition was found in her carry-on bag. After being given *Miranda* warnings, she admitted to possessing the gun and claimed her U.S. husband gave it to her. She also admitted knowing she was in the U.S. on a tourist visa but claimed to be applying for asylum/green card. She stated that she had travelled with the gun previously. The defendant was charged with a violation of 18 U.S.C. 922(g)(5) and she pled guilty (instant offense).

On her initial arrest, the defendant was also in possession of $10,900 in cash and sex paraphernalia (including hundreds of condoms). She reported being in an Orem hotel for several weeks. She also reported a U.S. citizen husband, B. R., in Ohio; he does not speak Chinese, and she does not speak English.

Investigation (including bank subpoenas and open-source searches relating to reported phone numbers) has disclosed that the defendant, who claimed to be unemployed and was not authorized to work in the U.S., had made over $160,000 in cash deposits into her bank accounts in a 10-month period. During this 10-month (43 week) period, the defendant spent over 31 weeks in hotels in 15 different cities in 11 different states. Her cash deposits averaged $9,350 per city. Phone numbers associated with the defendant (including at least one phone number she included on

immigration applications) appeared as contact numbers in ads of Asian/Chinese women offering sex for pay. The ads were explicit in terms of the services offered, including "oral sex, 69, orgasm".

The defendant arrived in Utah on or about February 27, 2025 arriving from Savannah, Georgia and checked into an Orem, Utah motel. The motel at which the defendant stayed for three weeks in Orem is a location known to law enforcement for involvement in the Chinese/Asian sex trade. Prior to the defendant's arrest on March 20, 2025, Orem Police had already received multiple reports regarding sex trade at that location. Investigation also has disclosed evidence on a prostitution website that a group uses both the same motel in Orem and the hotel that the defendant stayed at in Bloomington, MN in November 2024. The defendant's travel patterns are consistent with patterns observed in Chinese sex workers, who typically rotate between cities every couple of weeks.

Shortly after the defendant's arrival in Utah, she deposited $8,790 into her Bank of America account on March 3, 2025. Then, between March 5 and March 11, she accepted 7 Zelle payments from 6 different persons with male names in amounts between $100 and $160. (One male appears to have paid twice in one day.) One payment is specifically noted as being "for 'service'". Additionally, she had $10,900 in cash hidden in her luggage when she was arrested, which she was

attempting to transport out of Utah. That amount of cash would equate to 109 'customers' at $100 each, with 80 to 110 individuals being a reasonable estimate.

On January 13, 2025, the defendant signed a USCIS Form I-485 (Application to Register Permanent Residence or Adjust Status) under penalty of perjury.[4] Under Part 8, relating to Criminal Acts and Violations, the defendant responded "no" to the following questions:[5]

> 35. Have you **EVER**[6] engaged in prostitution or are you coming to the United States to engage in prostitution?
>
> 36. Have you **EVER** directly or indirectly procured (or attempted to procure) or imported prostitutes or persons for the purpose of prostitution?
>
> 37. Have you **EVER** received any proceeds or money from prostitution?
>
> 38. Do you intend to engage in illegal gambling or any other form of commercialized vice, such as prostitution, bootlegging, or the sale of child pornography, while in the United States?

---

[4] Attached as Attachment B.

[5] This information is included not to prove that the answers were false (even though some clearly appear to be false) but rather to demonstrate the defendant's knowledge at the time she possessed the firearm that the conduct enquired about on the form was unlawful.

[6] All emphasis in original.

The facilitating nexus between the gun possession and the proffered prostitution-related felonies is gun's function as protection. The defendant has already conceded that she possessed the gun for safety. It is no leap of logic at all to conclude that the safety she desired was personal safety in sex work and protection as she held and transported thousands of dollars in cash. The defendant brought the gun into Utah with the intent to engage in or promote prostitution. She possessed the gun during her 3-week stay in an Orem motel. And she was transporting the gun out of Utah in the same luggage as $10,900 in cash.

The Tenth Circuit has held that physical proximity between a weapon and drugs can be sufficient to satisfy § 2K2.1(b)(6). *See, e.g.*, *United States v. Bunner*, 134 F.3d 1000, 1006 (10th Cir.1998); *United States v. Gomez–Arrellano*, 5 F.3d 464, 467 (10th Cir.1993). In *Bunner*, the Tenth Circuit explained how physical proximity could establish a nexus between a handgun and a drug-trafficking offense: "Handguns are widely recognized as a tool of the drug dealers['] trade. Accordingly, a weapon's proximity to narcotics may be sufficient to provide the nexus necessary to enhance a defendant's sentence under 2K2.1(b)[6]." 134 F.3d at 1006. In this case, we have proximity to prostitution and related cash, rather than drugs, but that is a factual distinction that makes no legal difference.

The Tenth Circuit has stated that carrying a firearm has the potential to facilitate even the mere possession of drugs. *See United States v. Justice*, 679 F.3d at 1255. "[A] reasonable person could find that the firearms gave him a sense of security emboldening

8

him to venture from his home with drugs that someone might wish to take from him by force." *Justice*, 679 F.3d at 1255. "When the defendant is out and about, with drugs on his person and a loaded firearm within easy reach, one can infer that the proximity of the weapon to the drugs is not coincidental and that the firearm 'facilitated, or had the potential of facilitating,' the drug offense by emboldening the possessor." *Id.* Again, the same principles apply in the prostitution context. Both types of conduct are illegal, clandestine, involve large amounts of cash subject to theft, and involve significant risk of danger to the seller. Protection is therefore a prime consideration in both types of cases, and a gun thus can facilitate the offense. That was the precise result in the Fourth Circuit case of *United States v. Posey*, 644 F. App'x 253 (4th Cir. 2016), in which the court held "that the district court did not err in finding that the firearm facilitated, or had the potential to facilitate, the offense of promoting prostitution. The firearm would have encouraged the payment of money owed and provided protection to [the defendant]."

The Court should apply the 4-level increase above the base offense level under USSG § 2K2.1(b)(6)(B) because the defendant "used or possessed any firearm or ammunition in connection with another felony offense . . .."

### Application of U.S.S.G. § 3C1.1 Enhancement.

U.S.S.G. § 3C1.1 cmt. 4(H) provides that a 2-level enhancement applies if the defendant provides "materially false information to a probation officer in respect to a presentence or other investigation for the court." In this case, the defendant (and her

husband B.R.) provided materially false information in their interviews with the probation officer, relating to the length and nature of their relationship. They claimed a relationship of 18 months prior to their marriage on November 26, 2024, when the defendant only arrived in the United States on March 10, 2024 (8 ½ months). Although the defendant spent about 3 weeks in Ohio (the State of husband's residence) in May to June 2024 (where she deposited $6,590 into her bank account on June 4, 2024), there is no *documented* contact between the defendant and B.R. prior to September 3, 2024 when a $5 Zelle transfer from B.R. to the defendant's Bank of America account, noted as "Zelle payment from [B.R.] for Test.".

B.R. later opened an account at Bank of America on September 6, 2024, which is a Friday, a couple days after the defendant traveled from Albany, NY to Greensboro, NC. B.R. received over $3,000 from the defendant's BoA account via Zelle on that Friday and an additional $6,000 on the following Monday, September 9, 2024. On October 5, 2024, the defendant was added as a consigner to B.R.'s BoA account, appearing to have occurred at a BoA branch in Strongsville, OH. Moreover, an Albany sex ad from August 16, 2024, was linked to a phone number with a 234-area code. 234 is an area code for northeastern Ohio, and covers B.R.'s hometown of Spencer, OH. The same phone number was listed as both B.R.'s and the defendant's primary contact number on the I-130 immigration form (green card application for the defendant) that was submitted in January 2025.

As noted above (previous section), the defendant does not speak English and B.R. does not speak Chinese, and the defendant has advised law enforcement that she and B.R. communicate through translation apps. Also, the defendant's frequent travel and long stays in hotels indicate that she and B.R. have spent little time together.

Based on the foregoing, it is likely that the marriage between the defendant and B.R. is fraudulent and merely a cover for illegal activity, and that statements regarding the existence of a legitimate loving marriage and an intent to relocate to Australia were materially false and misleading.  A 2-level enhancement for obstruction pursuant to U.S.S.G. § 3C1.1 should be applied in the defendant's case.

**No Other Objections.**

The United States has no objection to the PSR's Guideline calculations or other recommendations, including the recommendations for conditions of supervised release.

**Hearing Notice.**

The United States advises the Court and the defendant that it intends to pursue the objections stated herein and present evidence as required.  The United States anticipates that the testimony could take approximately 60 to 90 minutes, depending on cross-

//

//

examination.

     DATED this __8th____ day of __September__, 2025.

                                          FELICE JOHN VITI
                                          Acting United States Attorney

                                          **/s/ Michael Kennedy**

                                          MICHAEL KENNEDY
                                          Assistant United States Attorney